United States District Court
For the Northern District of California

1

2

3

4

5          UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8    JACK L. MORRIS,                              No. C 06-5015 SI (pr)

9            Plaintiff,                           **ORDER GRANTING MOTION FOR
                                                  RECONSIDERATION AND
10       v.                                       GRANTING SUMMARY JUDGMENT
                                                  FOR DEFENDANT WINSLOW AND
11   JOE McGRATH; et al.,                         RISENHOOVER**

12           Defendants.

13   _____/

14

15                              **INTRODUCTION**

16       On September 9, 2009, the court granted the defense motion for summary judgment in

17   favor of all but two of the moving defendants.  The motion was denied as to defendants Dr.

18   Winslow and nurse practitioner Risenhoover because there were triable issues of fact as to both

19   prongs of plaintiff's Eighth Amendment claim against them.   Defendants Winslow and

20   Risenhoover then moved for leave to file a motion for reconsideration of that order, arguing that

21   the court failed to address their dispositive argument that they were entitled to qualified

22   immunity. They pointed to the court's determination that it was a close call on the objective

23   prong of the Eighth Amendment claim – i.e., it was a close call whether the need for special

24   shoes to accommodate claw toes was a serious medical need and it was an even closer call

25   whether the cuts and abrasions not larger than a half-inch in size on the claw toes were serious

26   medical needs – and urged that it could not have been clear to them that their conduct might

27   constitute deliberate indifference to an alleged serious medical need.  The court granted the

28   motion for leave to file a motion for reconsideration and set a briefing schedule. The motion for

reconsideration has been briefed and is ready for decision.

**United States District Court**

For the Northern District of California

1    For the reasons discussed below, the court determines that defendants Winslow and

2  Risenhoover are entitled to qualified immunity.  Rather than repeat the statement of facts and

3  the legal analysis from the challenged order, the court will address the qualified immunity

4  question, presupposing that the reader of this order recently has read the Order Granting

5  Summary Judgment In Part; Denying Discovery Motions; And For Scheduling (hereinafter

6  "Summary Judgment Order") (docket # 122).  The following discussion replaces the sentence

7  at p. 17:15-17 of the Summary Judgment Order, in which the court stated: "These same triable

8  issues of fact that require denial of their motion on the merits of the Eighth Amendment claim

9  also require rejection of their argument that they are entitled to qualified immunity."

10

11                                    **DISCUSSION**

12    The defense of qualified immunity protects "government officials . . . from liability for

13  civil damages insofar as their conduct does not violate clearly established statutory or

14  constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,

15  457 U.S. 800, 818 (1982).  The rule of qualified immunity "'provides ample protection to all but

16  the plainly incompetent or those who knowingly violate the law.'"  Burns v. Reed, 500 U.S. 478,

17  495 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

18    In determining whether the defendants are entitled to qualified immunity, the usual first

19  step is to answer this threshold question: "Taken in the light most favorable to the party asserting

20  the injury, do the facts alleged show the officer's conduct violated a constitutional right?"

21  Saucier v. Katz, 533 U.S. 194, 194 (2001).  If no constitutional right was violated if the facts

22  were as alleged, the inquiry would end and the defendants prevail.  Here, the court determined

23  there was a triable issue of fact as to whether there was an Eighth Amendment violation.  The

24  inquiry therefore proceeds to the second  step of the Saucier inquiry, which is "to ask whether

25  the right was clearly established. . . .  'The contours of the right must be sufficiently clear that

26  a reasonable official would understand that what he is doing violates that right.'"  Id. at 201-02

27  (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  The "right" as to which the inquiry

28  is made is the constitutional right that gives rise to the federal claim; thus, the state regulations

**United States District Court**

For the Northern District of California

1   and state law identified by Morris as showing a right to medical care are beside the point.  <u>See</u>

2   <u>generally</u> <u>Cousins v. Lockyer</u>, 568 F.3d 1063, 1070 (9th Cir. 2009).

3   　　　　The Ninth Circuit clarified the qualified immunity analysis for a deliberate indifference

4   claim in <u>Estate of Ford v. Ramirez- Palmer</u>, 301 F.3d 1043, 1049-50 (9th Cir. 2002).  The court

5   explained that, for an Eighth Amendment violation based on a condition of confinement (such

6   as the safety risk in <u>Estate of Ford</u> or the health risk in Morris' case), "'a prison official cannot

7   be found liable under the Eighth Amendment for denying an inmate humane conditions of

8   confinement unless the official knows of and disregards an excessive risk to inmate health or

9   safety; the official must both be aware of facts from which the inference could be drawn that a

10  substantial risk of serious harm exists, and he must also draw the inferences.' . . .  Thus, a

11  reasonable prison official understanding that he cannot recklessly disregard a substantial risk of

12  serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the

13  exposure in any given situation was not that high.  In these circumstances, he would be entitled

14  to qualified immunity.  <u>Saucier</u>, 533 U.S. at 205."  <u>Estate of Ford</u>, 301 F.3d at 1050 (quoting

15  <u>Farmer v. Brennan</u>, 511 U.S. at 834).  In <u>Estate of Ford</u>, the court explained that even though the

16  general rule of deliberate indifference had been expressed in <u>Farmer</u>, no authorities had "fleshed

17  out 'at what point a risk of inmate assault becomes sufficiently substantial for Eighth

18  Amendment purposes.'" <u>Estate of Ford</u>, 301 F.3d at 1051 (quoting <u>Farmer</u>, 511 U.S. at 834 n.3).

19  Because it hadn't been fleshed out, "it would not be clear to a reasonable prison official when

20  the risk of harm from double-celling psychiatric inmates with one another changes from being

21  <u>a</u> risk of <u>some</u> harm to a <u>substantial</u> risk of <u>serious</u> harm.  <u>Farmer</u> left that an open issue.  This

22  necessarily informs 'the dispositive question' of whether it would be clear to reasonable

23  correctional officers that their conduct was unlawful in the circumstances that [they]

24  confronted." <u>Estate of Ford</u>, 301 F.3d at 1051 (emphasis in original).

25  　　　　At the relevant time, the law was clearly established that a prison official violated the

26  Eighth Amendment if he was deliberately indifferent to a prisoner's serious medical needs.

27  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th

28  Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136

1   (9th Cir. 1997) (en banc).  Defendants do not contend otherwise.  Rather, they argue that given

2   the ambiguity of whether Morris' need for special shoes amounted to a <u>serious</u> medical need, it

3   would not have been clear to a reasonable medical practitioner in similar circumstances that their

4   actions violated the Constitution.  The court agrees.

5        "Because society does not expect that prisoners will have unqualified access to health

6   care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only

7   if those needs are 'serious.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  The Ninth Circuit has

8   stated that a "serious" medical need exists if the failure to treat a prisoner's condition could

9   result in further significant injury or the "unnecessary and wanton infliction of pain." <u>McGuckin</u>,

10  974 F.2d at 1059.  The existence of chronic and substantial pain is an example of an indication

11  that a prisoner has a serious need for medical treatment.  <u>See</u> <u>id.</u> at 1059-60.  That law was

12  clearly established, and defendants could well know it and all the facts, yet mistakenly believe

13  they did not confront a medical need of constitutional significance.  Just as in <u>Estate of Ford v.</u>

14  <u>Ramirez-Palmer</u>, 301 F.3d 1043, 1050 (9th Cir. 2002), where the officers  who double-celled an

15  inmate who was killed by his violent cellmate could know all the facts yet mistakenly but

16  reasonably perceive that the exposure to the risk of serious harm in double celling those inmates

17  "was not that high," the medical care providers here could have mistakenly but reasonably

18  perceived that Morris' request for orthopedic shoes was not a <u>serious</u> medical need.

19       This court found that there was a triable issue of fact as to whether the need for special

20  shoes was a serious medical need, but considered it a close call.  Whether foot problems such

21  as Morris' amount to serious medical needs is highly questionable.  A number of courts have

22  found that they don't.  <u>See e.g.</u>, <u>Snipes v. Detella</u>, 95 F.3d 586, 591 & n.1 (7th Cir. 1996)

23  (refusing to provide anesthesia for removal of toenail was not deliberate indifference to a serious

24  medical need); <u>Chatin v. Artuz</u>, 28 Fed. Appx. 9, *10 (2d Cir. 2001) (plaintiff's condition, which

25  was diagnosed at various times by medical staff "as a sprained ankle, a bone spur, and a

26  neuroma, did not rise to the level of seriousness that the Eighth Amendment requires");

27  <u>McKinnis v. Williams</u>, 2001 WL 873078, *4 (S.D.N.Y. 2001) (toe injury for which prisoner

28  wanted, among other things, special shoes "does not rise to the level of 'serious medical need'");

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   Veloz v. New York, 35 F. Supp. 2d 305, 312 (S.D.N.Y. 1999) (prisoner's foot problems and pain

2   were not a sufficiently serious medical need); Alston v. Howard, 925 F. Supp. 1034, 1040

3   (S.D.N.Y. 1996) (plaintiff failed to show that his medical needs for high performance footwear

4   to remedy chronic ankle pain were sufficiently serious to  meet the objective component

5   necessary to establish a constitutional violation).  The court has not found any helpful cases from

6   the Ninth Circuit regarding special shoes and claw toes, but has found cases showing conditions

7   more significant than Morris' that have been found not to be sufficiently serious to satisfy the

8   objective component of the Eighth Amendment.  See, e.g., Hallett v. Morgan, 296 F.3d 732, 746

9   (9th Cir. 2002) (even if delay for dentures was 5-1/2 months long, plaintiffs did not establish

10  objective or subjective prong of Eighth Amendment claim); Wood v. Housewright, 900 F.2d

11  1332, 1335 (9th Cir. 1990) (one judge finding delay in treatment for painful broken orthopedic

12  pins in inmate's shoulder did not constitute an Eighth Amendment violation because the delay

13  did not cause substantial harm); but see id. at 1336, 1338-40 (two judges opining that same delay

14  was deliberate indifference).

15       Morris was seeking non-orthopedic, commercially available shoes.   The circumstances

16  at the time included: (1) Morris was in the SHU and spent the vast majority of each day locked

17  in his cell; (2) in addition to the regular shoes that abraded his toes, Morris had a pair of shower

18  shoes and may have had other shoes available to wear that would not have abraded his claw toes;

19  (3) the shoes sought were not custom orthopedic devices; (4) the desired shoes had no curative

20  powers; (4) Morris elected not to spend his own money to buy the desired commercially

21  available shoes when the prison allowed such purchases and he had the money to do so; (5)

22  medical staff, including Risenhoover, treated the cuts and abrasions that developed on his feet

23  from wearing the standard shoes. Defendants reasonably could have understood the situation to

24  be that the special shoes would have made Morris more comfortable, but that the absence of a

25  comfortable shoe did not rise to the level of a deprivation of a serious medical need.  With such

26  an understanding, they reasonably could have understood that their slow response to his request

27  for the shoes did not deprive Morris of a constitutional right.  These defendants took some steps

28  toward the goal of obtaining the shoes, although the steps they took were not impressive.  Morris

5

1   was seen by health care providers shortly after his several letters to defendant Winslow.  Morris

2   was seen by Risenhoover several times, and each time he saw her she ensured that he was treated

3   with bandaids and over-the-counter ointments and medications if, in her judgment, his injuries

4   warranted such treatment.  Risenhoover also took some steps toward advancing Morris' requests

5   for shoes, although many of those steps were ineffectual.  The bottom line is that, while neither

6   defendant's actions would be held up as an example of best practices, the defendants could

7   reasonably have believed that their acts were not constitutionally deficient in light of the

8   circumstances.

9       Because the law did not put defendants on notice that their conduct would be clearly

10  unlawful, summary judgment based on qualified immunity is appropriate.  See Saucier, 533 U.S.

11  at 202.  Defendants met their burden of proof in their moving papers.  Morris did not introduce

12  evidence to show the existence of a genuine issue of fact on the defense.  Defendants Winslow

13  and Risenhoover are entitled to judgment as a matter of law on the qualified immunity defense.

14

15                                        **CONCLUSION**

16      For the foregoing reasons, defendants' motion for reconsideration is GRANTED.  (Docket

17  # 118.)  The court has reconsidered its determination in the Summary Judgment Order that

18  defendants Winslow and Risenhoover were not entitled to summary judgment on the qualified

19  immunity defense, vacates that determination, and now concludes that Winslow and

20  Risenhoover are  entitled to judgment as a matter of law on their defense of qualified immunity

21  against Morris' suit.  Defendants' motion for summary judgment on that ground is granted.

22      All claims over which the court has original jurisdiction have now been resolved, and the

23  court declines to exercise supplemental jurisdiction over Morris' state law claims.  See 28 U.S.C.

24  § 1367(c)(3).

25      In light of the foregoing, plaintiff's motion for a court order directing defendants to

26  arrange a telephone conference, defendant's motion to stay discovery, plaintiff's motion to

27  compel, plaintiff's motion to dismiss his earlier opposition to the motion for leave to file a

28  motion for reconsideration, plaintiff's motion for court appointed experts, and plaintiff's motion

*United States District Court*
*For the Northern District of California*

1    in limine are DISMISSED as moot.  (Docket #s 117, 119, 121, 125, 127, 133.)

2        Judgment will now be entered in favor of all defendants and against plaintiff on the

3    federal claims.  The state law claims are dismissed without prejudice to plaintiff pursuing them

4    in state court.  The clerk shall close the file.

5        IT IS SO ORDERED.

6    Dated: December 5, 2009             _____

7                                    SUSAN ILLSTON
                                  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

7